UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DAVID LIFSCHULTZ,

                    Plaintiff,

                                                    **OPINION AND ORDER**
                                                    12-CV-1881 (ER)

          - against -

LAWRENCE LIFSCHULTZ, MICHAEL
STANTON, ESQ., and THOMAS PUCCIO,
ESQ.,

                    Defendants.
------------------------------------------------------------x

RAMOS, D.J.:

      On March 13, 2012, Defendant *pro se* Lawrence Lifschultz ("Lawrence") removed this

action from New York State Supreme Court, Westchester County, to this Court pursuant to 28

U.S.C. § 1332, on the basis of diversity of citizenship.  On April 2, 2012, Defendant Michael

Stanton, Esq. ("Stanton") filed a notice of "Consent to Removal Subject to Motion to Sever &

Remand."   All parties appeared before this Court on April 11, 2012, and were subsequently

instructed to submit briefing to address whether the removal of the instant action was proper.  On

April 18, 2012, Plaintiff David Lifschultz ("Plaintiff" or "David") filed a motion to remand this

action to New York State Supreme Court.  Defendants Stanton and Lawrence filed separate

oppositions to David's motion on April 25, 2012, and April 26, 2012, respectively.  For the

reasons set forth below, Plaintiff's motion to remand to New York State Supreme Court,

Westchester County is GRANTED.

    I.   <u>Background and Procedural History</u>

      Plaintiff David and Defendant Lawrence Lifschultz are brothers.  This action stems from

an agreement that Plaintiff and Defendants entered into before the Surrogate's Court of the

County of Westchester (the "Agreement").  (Pl.'s Mem., Ex. A ¶ 5.)  The Agreement resolved a dispute regarding the disposition of the Estate of Sidney B. Lifschultz ("the Estate"), the father of Plaintiff David and Defendant Lawrence.  (*Id.*)  Pursuant to the Agreement, Defendant Stanton, as co-escrow agent with Defendant Puccio,[1] were to arrange for the sale of certain property belonging to the Estate.  (*Id.* ¶ 6.)  The Defendant escrow agents were to use the proceeds of the property sales to make payments to various creditors of the Estate.  (*Id.*)  Once all such obligations to those creditors had been fulfilled, the co-escrow agents were to make a payment to Defendant Lawrence in the sum of $1,000,000.00.  (*Id.*)  If, however, the proceeds of the sale of the Estate's property proved to be insufficient to satisfy the creditors' and Lawrence's interest, Plaintiff David was obligated to pay the remaining balance in the form of a promissory note secured by a second mortgage on real property owned by the Estate known as Beaumere, and the pledge of 6,000,000 shares of stock in a company named GENOIL.  (*Id.*)  David was required to pay any remaining balance to creditors of the Estate and to Lawrence no later than February 15, 2012.  (*Id.*)

Plaintiff David brought suit in New York State Supreme Court on February 13, 2012, alleging that the Defendant escrow agents had purposefully delayed and failed to meet their obligations under the Agreement to effectuate the sale of the Estate properties, and as a result the creditors were not paid and Lawrence's interest in the Estate was not satisfied.  (*Id.* ¶ 9.)   David alleged that his obligation to pay Lawrence and the Estate's creditors was triggered only because of the failure of the escrow agents to fulfill their duties.  (*Id.* ¶ 10.)  Accordingly, David brought suit against Stanton and Puccio, naming Stanton in his individual capacity in four counts alleging

---

[1] Defendant Puccio died shortly after the filing of this action in state court.  (*See* Def. Stanton's Suggestion of Death.)

breach of contract, fraud, breach of fiduciary duty, and negligence, respectively.[2]  (*Id.* ¶¶ 7-11, 32-48.)

David also alleged several causes of action against Defendant Lawrence in the same suit. (*Id.* ¶¶ 12-31.)  First, David alleged that all parties to the Agreement were bound to exercise good faith in its implementation, meaning that a party would be in violation of the Agreement if he were to take "steps, by way of comments or statements, to affect the assets, subject to the terms of this agreement." (*Id.* ¶ 6.)  He asserted that Lawrence violated this duty by accusing David of money laundering and tax evasion, which caused David to be removed as a member of the Board of Lifschultz Terminal and Leasing Inc., an entity that owned nearly 6,000,000 shares of GENOIL stock, and caused assets subject to the Agreement to be adversely affected.  (*Id.* ¶¶ 15-18.)  Second, David alleged that Lawrence's statements were defamatory.  (*Id.* ¶¶ 27-30.) Finally, David asserted that Lawrence had been unjustly enriched by hiding property belonging to the Estate and subject to the Agreement that was to be sold in order to satisfy obligations to the Estate's creditors.  (*Id.* ¶¶ 21-25.)

On the same day that he brought suit, Plaintiff David filed an order to show cause for a temporary restraining order in New York State Supreme Court to prevent the enforcement of the promissory note.  (Pl.'s Mem., Ex. B.)  The Honorable Lester B. Adler of the New York State Supreme Court granted Plaintiff the relief he requested, pending a subsequent motion for a preliminary injunction.  (*Id.*, Ex. C.)  On March 13, 2012, before the preliminary injunction hearing occurred, Defendant Lawrence removed the action to this Court. (Notice of Removal; Pl.'s Mem., Ex. D.)  On April 2, 2012, Stanton filed a notice of consent to removal, styled "Consesnt to Removal Subject to Motion to Sever and Remand," expressly reserving the right to serve a motion to sever and remand all claims against him as co-escrow agent of the Estate to the

---

[2] Puccio was named as a defendant for "jurisdictional purposes only."  (Pl.'s Mem., Ex. A ¶ 4.)

Surrogate's Court of the County of Westchester.   (Def. Stanton's Mem. at 2.)  Stanton asserted that he was entitled to severance and remand of all claims asserted against him pursuant to the so-called "probate exception" to diversity jurisdiction.  (*Id.*)

II. <u>Legal Standard</u>

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).  The Second Circuit has clearly explained that federal courts should construe this statute narrowly, resolving any doubts against removability, "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments."  *Lupo v. Human Affairs Int'l, Inc.,* 28 F.3d 269, 274 (2d Cir. 1994) (citation omitted); *see also Somlyo v. J. Lu-Rob Enterprises, Inc.*, 932 F.2d 1043, 1045-46 (2d Cir. 1991), *superseded on other grounds by rule as stated in Contino v. United States*, 535 F.3d 124, 127 (2d Cir. 2008).  Such strict construction of the removal statute also aids in avoiding "litigation about matters peripheral to the merits of lawsuits."  *Payne v. Overhead Door Corp.*, 172 F. Supp. 2d 475, 477 (S.D.N.Y. 2001) (quoting *Berrios v. Our Lady of Mercy Med. Ctr.*, 99 CIV. 21 (DLC), 1999 WL 92269, at *3 (S.D.N.Y. Feb. 19, 1999)).

At all times the party seeking removal bears the burden of proving that the jurisdictional and procedural requirements of removal have been met.  *Burr v. Toyota Motor Credit Co.*, 478 F. Supp. 2d 432, 436 (S.D.N.Y. 2006) (citing *Mehlenbacher v. Akzo Nobel Salt, Inc.,* 216 F.3d 291, 296 (2d Cir. 2000)).  Such an approach is "warranted because removal abridges the deference courts generally give to a plaintiff's choice of forum."  *Groman v. Cola*, No. 07 CV 2635 (RPP), 2007 WL 3340922, at *3 (S.D.N.Y. Nov. 7, 2007) (quoting *Frontier Ins. Co. v.*

*MTN Owner Trust*, 111 F. Supp. 2d 376, 378 (S.D.N.Y. 2000) (internal quotation marks omitted).

A defendant must file a notice of removal within thirty days "after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading . . . or within [thirty] days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter." [3] 28 U.S.C. § 1446(b)(1).   In the case of multiple defendants, "the removal statute has consistently been interpreted to require that all defendants consent to removal within the thirty day period." *Payne*, 172 F. Supp. 2d at 477.  This is known as the rule of unanimity, which requires each defendant to an action to provide unambiguous, written consent to the court before the thirty-day period expires.  *Id.*  Consent among defendants is insufficient; "each defendant must notify the Court of its consent prior to the expiration of the thirty-day period for the removal petition to be timely." *Berrios*, 1999 WL 92269 at *2.

If any defect in the removal procedure occurs, courts are authorized to remand a case to the state court in which the action originated.  28  U.S.C. § 1447(c); *see also LaFarge Coppee v. Venezolana De Cementos, S.A.C.A.*, 31 F.3d 70, 72 (2d Cir. 1994).  While a procedural defect in removal does not deprive a federal court of jurisdiction, all doubts as to the procedural validity of removal will be resolved in favor of remand.  *Burr*, 478 F. Supp. 2d at 437; *see also Somlyo*, 932 F.2d at 1046; *see also Codapro Corp. v. Wilson,* 997 F. Supp. 322, 325 (E.D.N.Y. 1998) (stating that "[t]here is nothing in the removal statute that suggests that a district court has 'discretion' to overlook or excuse prescribed procedures." (internal quotation

---

[3] Plaintiff challenges the validity of Defendant Lawrence's notice of removal on the grounds that it did not comply with this procedural requirement; Plaintiff contends that since Lawrence filed a notice of removal prior to service of the complaint upon him, it was premature.  (Pl.'s Mem. at 7-8.)  As the Court finds the removal to be defective on other grounds, *see infra* Part III, Plaintiff's argument on this point need not be addressed herein.

marks and citation omitted)).  As is true of sustaining a removal action generally, the removing party bears the burden of demonstrating that the removal was procedurally proper.  *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 171 (S.D.N.Y. 2003) (citing *Hodges v. Demchuk*, 866 F. Supp. 730, 732 (S.D.N.Y. 1994)). If the removing party fails to meet this burden, the case must be remanded.  *Bellido-Sullivan v. Am. Int'l Group, Inc.*, 123 F. Supp. 2d 161, 163 (S.D.N.Y. 2000).

Thus, in a multi-defendant case where all defendants must provide the court with written, unambiguous consent to removal within the thirty-day period, a "[f]ailure to do so amounts to a procedural defect in the removal process and justifies a remand by the federal court." *Thomas & Agnes Carvel Found. v. Carvel*, 736 F. Supp. 2d 730, 740 (S.D.N.Y. 2010); *see also Beatie & Osborn LLP v. Patriot Scientific Corp.,* 431 F. Supp. 2d 367, 383 (S.D.N.Y. 2006).  The gravamen of the foregoing cases is that each removing defendant must provide the federal court with a clear, plain and timely statement of its intention to subject itself to federal jurisdiction.  Failure to do so, or to do so in a way that is equivocal or ambiguous, renders the purported consent a nullity.

III. <u>Discussion</u>

A. <u>Defendant Stanton's Consent to Removal</u>

Plaintiff commenced this action in New York State Supreme Court on February 14, 2012, and Defendant Lawrence filed a notice of removal on March 13, 2012, clearly within the statutorily prescribed thirty-day period for removal.  Defendant Stanton alleges, however, that no service was made upon him until March 12, 2012.  (Def. Stanton's Mem. at 2.)  Stanton asserts that he gave written consent to Plaintiff David and Defendant Lawrence on March 14, 2012, after receiving notification of Lawrence's intent to file for removal.  (*Id*.)  Stanton also alleges that he

filed a "further and additional" notice of consent to removal with this Court on April 2, 2012—well after the expiration of the thirty-day period.  (*Id.*)  However, since Stanton was not served with the initial pleading until March 12, 2012, the thirty-day period began to run as to him on that date.  *See* 28 U.S.C. § 1446(b)(2)(B).  Therefore, Stanton's April 2, 2012 notice of consent to removal was timely.

Plaintiff argues that Stanton's consent was deficient, however, because it was subject to an express reservation to argue that this Court cannot exercise jurisdiction over him because of the probate exception to diversity jurisdiction.  (Pl.'s Mem. at 6-7.)  Defendants Stanton and Lawrence respond that Stanton's consent was unambiguous and the "express reservation" was merely intended to "provide notice to the Court and to the parties of the intent to seek severance and remand later as appropriate." (Def. Stanton's Mem. at 4; *see also* Def. Lawrence's Mem. at 2.)  Defendants' position, however, is inherently inconsistent, thus rendering Stanton's consent fatally ambiguous.

At the outset, the very title of Stanton's consent gives no clear understanding as to whether Stanton believed removal was appropriate or not, for it suggests that a legal basis exists to *require* remand.  If anything, the title suggests—though not very clearly—that he never had any intention of ultimately subjecting himself to the jurisdiction of this Court.[4]  Stanton is clearer in his Memorandum of Law, however, wherein he argues that the claims against him "must"—not may—be severed and remanded.  (Def. Stanton's Mem. at 4.)  Thus, while asserting on the one hand that he unambiguously consented to this Court's jurisdiction, he is at the same time engaged in a full-throated argument that removal as to him is not appropriate.  That he makes both arguments in the very same submission only adds to the confusion.  Seen in this light, the

---

[4]  A consent to removal "[s]ubject to [m]otion to [s]ever and [r]emand," is also, so far as the Court has been able to determine, a position not previously analyzed, much less recognized, in the case law.

only thing that appears to be unambiguous is that Stanton's purported consent was merely an accommodation to his co-defendant to effectuate the removal to federal court, nothing more. This the case law does not allow, for it directly subverts plaintiff's choice of forum. *See, e.g.*, *Frontier Ins. Co.*, 111 F. Supp. 2d at 378.

In addition, as set forth more fully below, Stanton is also mistaken in his assertion that the probate exception requires this Court to remand the causes of action against him to Westchester County Surrogate's Court. Thus, there exists an additional level of ambiguity because a reasonable reading of his consent is that it is subject to, or conditioned upon, his prevailing on the proposed motion to sever and remand.

### B.  The Probate Exception to Diversity Jurisdiction

The probate exception to federal diversity jurisdiction is not set forth in the text of the U.S. Constitution or any federal statute, but rather is a creature of judicial doctrine. *Marshall v. Marshall*, 547 U.S. 293, 299 (2006). It has long been established that federal courts do not have jurisdiction to probate a will or to administer an estate, but that jurisdiction does lie when a federal court is entertaining suits 'in favor of creditors, legatees and heirs and other claimants against a decedent's estate to establish their claims so long as the federal court *does not interfere with the probate proceedings* or assume general jurisdiction of the probate or control of the property in the custody of the state court." *Markham v. Allen*, 326 U.S. 490, 494 (1946) (citing *Waterman v. Canal-Louisiana Bank & Trust Co.*, 215 U.S. 33, 43 (1909)) (emphasis added) (internal quotation marks omitted). "Interference with probate proceedings"—and the state court's possession of probate property—was long considered the focal point of the probate exception to diversity jurisdiction, causing many courts to "[puzzle] over the meaning of [these] words . . . and [to read them] to block federal jurisdiction over a range of matters well beyond

probate of a will or administration of decedent's estate." *Marshall*, 547 U.S. at 311.  In 2006, the Supreme Court significantly narrowed the scope of the probate exception and concluded that "the 'interference' language in *Markham* [was] essentially a reiteration of the general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res* . . . [but] does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Id.* at 311-12.

Before the Supreme Court rearticulated the restrictions of the probate exception, the Second Circuit, like most federal courts, interpreted it broadly to preclude federal jurisdiction over matters (1) "purely probate in character," and those that were (2) "probate-related." *Moser v. Pollin*, 294 F.3d 335, 340 (2d Cir. 2002).  Since the Supreme Court's decision in *Marshall*, however, the Second Circuit has clarified that federal diversity jurisdiction over matters dealing with probate is limited to cases in which a plaintiff seeks neither (1) to probate a will, administer an estate, or do "any other *purely* probate matter, nor (2) to reach a *res* in the custody of a state court." *Lefkowitz v. Bank of New York*, 528 F.3d 102, 106 (2d Cir. 2007) (emphasis in original); *see also Marcus v. Quattrochi*, 715 F. Supp. 2d 524, 532 (S.D.N.Y. 2010) (describing the Second Circuit's refined two-part inquiry in *Lefkowitz* to determine whether a case falls within the probate exception to diversity jurisdiction).

Thus, any *in personam* claims—although related to *in rem* claims regarding the probate of a will or administration of an estate, which may not be litigated in federal court—for which a plaintiff "seeks damages from [a defendant] personally rather than assets or distributions from [an] estate" are within the jurisdiction of the federal courts.  *Lefkowitz*, 528 F.3d at 107-08. "[C]laims seeking, in essence, disgorgement of funds that remain under the control of the [p]robate [c]ourt," fall outside federal jurisdiction, while those "seeking personal damages from

the defendants" do not.  *Marcus*, 715 F. Supp. 2d at 532 (quoting *Lefkowitz*, 528 F.3d at 107-08) (internal quotation marks omitted).  Essentially, the probate exception "should not be used as an excuse to decline to exercise jurisdiction over actions merely because they involve a probate related matter."  *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 251 (S.D.N.Y. 2006) (citation and internal quotation marks omitted).

   In the instant matter, Plaintiff brought suit against Defendant Stanton in his individual capacity[5] for breach of contract, fraud, breach of fiduciary duty, and negligence, alleging that Stanton knowingly, willfully, and fraudulently delayed and failed to meet his obligations as co-escrow agent of the Estate.  (Pl.'s Mem., Ex. A ¶¶ 7-11, 32-48.)  But none of these claims seek to have the Estate administered nor could they possibly "reach a *res* in the custody of a state court." *Lefkowitz*, 528 F.3d at 106.  Rather, David seeks personal damages from Defendant Stanton.  *See Marcus*, 715 F. Supp. 2d at 532 (stating that claims seeking personal damages, unlike claims seeking distributions from estate funds under the control of a probate court, are *not* subject to the probate exception to diversity jurisdiction).  If the relief sought were granted to David, it would not require this Court to assert "control of any *res*" in the custody of the Surrogate's Court. *Lefkowitz*, 528 F.3d at 108.  As the "probate exception can no longer be used to dismiss 'widely recognized tort[s]' such as breach of fiduciary duty . . . merely because the issues intertwine with claims proceeding in state court," Defendant Stanton is not entitled to have these claims severed and remanded to be adjudicated in the Surrogate's Court of Westchester County.  *Id.* at 108 (quoting *Marshall*, 547 U.S. at 311).

---

[5] Stanton is mistaken when he asserts that the claims against him are "solely in his role as Co-Escrow Agent." (Def. Stanton's Mem. at 4.)

As all doubts in a removal action are resolved against removability, *see Lupo,* 28 F.3d at 274; *see also Somlyo*, 932 F.2d at 1045-46, Stanton's "express reservation" to serve a motion to sever and remand all claims against him thus renders his consent ambiguous.

    C.  <u>Exceptions to the Rule of Unanimity</u>

The Court notes that there are several exceptions to the rule of unanimity that would allow for an action to be properly removed to federal court even without unambiguous consent from all defendants. Federal courts are able to retain jurisdiction over a case that has been removed without the unambiguous consent of all defendants where: "(1) the non-[consenting] defendants have not been served with service of process at the time the removal petition is filed; (2) the non-[consenting] defendants are merely nominal or formal parties; and (3) the removed claim is a separate and independent claim as defined by 28 U.S.C. § 1441(c)." *Ell v. S.E.T. Landscape Design, Inc.*, 34 F. Supp. 2d 188, 194 (S.D.N.Y. 1999); *see also Heller v. New York City Health and Hosp. Corp.,* No. 09 Civ. 6193 (LTS) (GWG) 2010 WL 481336 (S.D.N.Y. Feb. 1, 2010). Stanton has not argued that any exception applies to him such that removal was proper without his unambiguous consent. The Court will address the nominal party exception, however, because of Stanton's apparent assertion that he is sued only in his official capacity as co-escrow agent.

    A party is deemed nominal "when that party has little or no interest in the outcome of the litigation and no cause of action or claim for relief is or could be stated against [it]." *Heller*, 2010 WL 481336 at *3. A party "with no real or direct interest in the controversy" is thus a nominal party. *Nannuzzi v. King*, 660 F. Supp. 1445, 1449 (S.D.N.Y. 1987) (quoting *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell,* 521 F.Supp. 1046, 1047 (S.D.N.Y.1981)) (internal quotation marks omitted). If one of the defendants is a nominal party to the action, it need not

unambiguously consent to the removal of the action. *Zerafa v. Montefiore Hosp. Hous. Co., Inc.*, 403 F. Supp. 2d 320, 328 (S.D.N.Y. 2005). The party claiming nominal status bears the burden of proof and, as is true of removal generally, all doubts are to be construed in favor of remand. *Nannuzzi,* 660 F. Supp. at 1449 (citation omitted).

If Defendant Stanton were entitled to severance and remand to the Surrogate's Court of Westchester County of all claims asserted against him—which he is not, *see supra* Part III. B— he could conceivably be considered a nominal party because, *per force*, no claims would be sought against him personally. However, as is set forth above, Stanton cannot avail himself of the probate exception to diversity jurisdiction because David has brought claims against him seeking personal damages, rather than claims seeking "disgorgement of funds that remain under the control of the [p]robate [c]ourt." *Lefkowitz*, 528 F.3d at 107. The case Stanton relies on, *Groman*, 2007 WL 3340922, is not to the contrary. In *Groman*, the court found the probate exception to apply, and ordered the case to be remanded, because plaintiff sought a price adjustment to, *inter alia*, a promissory note that was in the custody of the state court. *Id.* In that case, however, the plaintiff did not bring an action for damages, as David has done here; rather, Groman disputed the valuation of an estate asset, which would have required the court to disturb the state court's possession of estate property. *Id.* at *5-6. Therefore, Stanton is not a nominal party and was required to consent unambiguously to the removal of this action.

D. Attorneys' Fees

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Accordingly, Plaintiff seeks attorneys' fees as a result of improper removal. (Pl.'s Mem. at 8.) The Supreme Court has stated clearly that an award of attorneys' fees under the removal statute is "left to the

district court's discretion." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139, (2005); *see also Morgan Guar. Trust Co. of New York v. Republic of Palau,* 971 F.2d 917, 923-24 (2d Cir. 1992); *see also Berisic v. Winckelman*, 03 CIV. 1810 (NRB), 2003 WL 21714930, at *4 (S.D.N.Y. July 23, 2003). The standard for awarding attorneys' fees "should turn on the reasonableness" of the removing party's basis for seeking removal. *Martin*, 546 U.S. at 141. If an objectively reasonable basis for removal exists, an award of attorneys' fees should be denied. *Id.* Since Defendant Lawrence, the removing party, had an objectively reasonable basis for removing this matter—namely, diversity of citizenship and the consent of his co-defendant—this Court declines to award attorneys' fees to Plaintiff.

IV. <u>Conclusion</u>

For the foregoing reasons, Plaintiff's motion to remand is GRANTED. The Clerk's Office is respectfully directed to terminate the motion (Doc. 17) and to remand the entire case to the Supreme Court of the State of New York, Westchester County.


It is SO ORDERED.

Dated: June 20, 2012
   White Plains, NY

Edgardo Ramos, U.S.D.J.